USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _9/13/2019_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRACY STEVEN CLYDE,

        Plaintiff,

-against-

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

18 Civ. 6209 (AT)

**ORDER**

ANALISA TORRES, United States District Judge:

Plaintiff, Tracy Steven Clyde, commenced this action, Compl., ECF No. 2, against the Acting Commissioner of Social Security ("Commissioner") seeking review of an administrative law judge's ("ALJ") decision, dated June 14, 2017, finding him ineligible for disability insurance benefits, pursuant to Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 401–434. Record at 15–26, ECF No. 11.[1] The ALJ's decision became final on May 3, 2018, when the Appeals Council denied Plaintiff's request for review. Record at 6–9. This action followed. Before the Court are the Commissioner's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, Def. Mot., ECF No. 16, and Plaintiff's opposition to the motion, Pl. Mem., ECF No. 20. For the reasons stated below, the Commissioner's motion for judgment on the pleadings is GRANTED.

## BACKGROUND

### I. The ALJ's Decision

An administrative hearing was held on June 5, 2017, before ALJ Terrence Hugar, at which Plaintiff, represented by counsel, testified. Record at 15. An impartial vocational expert, Cynthia Bartmann, also testified at the hearing. *Id.* At issue was whether Plaintiff was disabled

---

[1] Pincites to the record of the underlying proceedings refer to the ECF-assigned page number.

as defined by Sections 216(i) and 223(d) of the SSA. *Id.* at 16. Following a review of Plaintiff's submissions and the record in his case, the ALJ made the factual findings that Plaintiff: (1) last met the insured status requirements of the SSA on December 31, 2014; (2) did not engage in substantial gainful activity during the period from his alleged onset date of June 26, 2012, through his date last insured of December 31, 2014; (3) through the date last insured, had the following severe impairments: degenerative disc disease of the cervical and lumbar spine and degenerative joint disease of the bilateral shoulders, status-post bilateral shoulder replacements; (4) through the date last insured, did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1; (5) through the date last insured, had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), except: with occasional posturals, except no crawling or climbing of ladders, ropes, or scaffolds; and no exposure to hazards such as unprotected heights and moving mechanical parts; limited to frequent use of both upper extremities; no reaching above shoulder level bilaterally; (6) through the date last insured, was unable to perform any past relevant work as defined in 20 C.F.R. § 404.1565; (7) was born on July 3, 1963 and was thus defined as a younger individual age 18–49 on the date last insured, with a subsequent changed age category under 20 C.F.R. § 40.1563 as he progressed in age; and (8) has at least a high school education and is able to communicate in English. Record at 18–25.

The ALJ also found that transferability of job skills was not material to the determination of disability, because the framework of the Medical-Vocational Rules as set forth in Subpart P, Appendix 2 of 20 C.F.R. § 404 supported a finding that Plaintiff was not disabled regardless of whether he had transferable job skills. Record at 25. The ALJ also found that, through the date last insured, considering Plaintiff's age, education, work experience, and residual functional

2

capacity, there existed jobs in significant numbers in the national economy that Plaintiff could perform. *Id.* at 25–26. The ALJ concluded, therefore, that Plaintiff was not under a disability from June 26, 2012, the alleged onset date, through December 31, 2014, the date last insured. *Id.* at 26.

II. The Commissioner's Contentions

The Commissioner contends that (1) the ALJ's determination that Plaintiff was not disabled is supported by substantial evidence, and (2) the ALJ properly weighed the opinions of Plaintiff's medical and treating physicians and considered all relevant evidence in the record, including the ALJ's finding concerning Plaintiff's residual functional capacity. Def. Mem. at 8–16, ECF No. 17.

Specifically, the Commissioner asserts that the ALJ considered the opinions of, among others, Aradhika Parmar, M.D., Plaintiff's family medicine physician; James Muffly, M.D., Plaintiff's treating orthopedic surgeon; and consultative examiner Timothy Moser, M.D. *Id.* at 3–5, 12–16. For instance, the Commissioner notes that on August 21, 2012, Plaintiff saw Dr. Parmar and complained of chronic back, right shoulder and bilateral hip pain and reported undergoing left shoulder arthroplasty surgery in 2009. *Id.* at 3–4. In other respects, the Commissioner contends, Plaintiff's physical examination findings were unremarkable and subsequent examination findings showed that, in spite of Plaintiff's complaints of back and bilateral shoulder pain, he had intact gait, no difficulty getting on and off the examination table, near full strength throughout his extremities and negative straight leg raises bilaterally. *Id.* at 4. Thereafter, in January 2015, in response to a request for medical records, Dr. Muffly stated that Plaintiff was "limited by his bilateral total shoulder replacements." *Id.* at 4. As noted above, Plaintiff was also seen by Dr. Moser, who opined that Plaintiff had no restrictions for standing,

3

walking, or sitting, could occasionally lift and carry 20 pounds, and frequently lift and carry 10 pounds. *Id.* at 5. Dr. Moser also found that Plaintiff could climb, balance, stoop, kneel, crouch and crawl frequently, could reach, handle, finger and feel frequently, but could not work at heights or around heavy machinery. *Id.* According to the Commissioner, the ALJ properly gave great weight to Dr. Moser's opinion. *Id.* at 13–14. Moreover, she contends, the treatment records as a whole support the ALJ's decision that Plaintiff retained the residual functional capacity to do light work with additional restrictions. *Id.* at 13. According to the Commissioner, the ALJ's decision is consistent with Dr. Moser's findings and the record evidence developed at the hearing. *Id.* In this case, Dr. Moser reported that Plaintiff had an intact gait, sat comfortably throughout the examination, could get on and off the examination table without difficulty and could take his shoes on and off without difficulty. *Id.* at 13–14. He also had normal cervical spine range of motion only slightly reduced lumbar spine and shoulder ranges of motion, full range of motion of the wrists bilaterally, a negative straight leg raise test bilaterally, intact reflexes normal sensation and near full strength throughout the extremities. *Id.* at 14.

The Commissioner contends that a consultative examiner's opinion can constitute substantial evidence in support of an ALJ's determination where, as here, it is consistent with other substantial evidence in the record. *Id.* at 14 (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983)). Further, the Commissioner maintains that the ALJ acted properly when he accorded little weight to the opinion of Dr. Muffly that Plaintiff was "limited by his bilateral total shoulder replacements," because the record did not show that Plaintiff had any limitation from these surgeries that were not already incorporated into the ALJ's residual functional capacity finding. *Id.* at 15. The Commissioner also contends that Plaintiff's contention that he was unable to work was belied by certain activities of daily living; for instance, he reported that

4

he did some cooking, shopped for groceries, went for walks independently, and remembered to take his medication, among other activities. *Id.* at 16.

   III.   Plaintiff's Contentions

Plaintiff, appearing *pro se*, submitted a letter attachment to his complaint that stated, *inter alia*, that he strongly disagrees with the denial of his application for disability benefits. Compl. at 4.[2] He notes that he has yet "to come across another human being [his] age or younger with both shoulders replaced." *Id.* He contends that his shoulder replacement treatment dated to July 2009, when he had his first procedure. *Id.* According to Plaintiff, he lives in cold weather states, namely, New York and Colorado, and "having metal (Titanium) in [his] body comes with its disadvantages on top of having degenerative disc (Arthritis) in [his] lower back." *Id.*

Plaintiff contends that he has been prescribed many different anti-inflammatory medications such as Tramadol, Meloxicam and Gabapentin, and has also been advised to obtain physical therapy for his lower back pain. *Id.* In addition, Plaintiff has tried cortisone shots. *Id.* Plaintiff asserts that he filed this action in order to have the ALJ's decision on his application for disability insurance benefits reviewed as of June 30, 2017. *Id.* at 4–5. Plaintiff contends that he was "fully aware of the criteria for injuries [such] as [his] own, however, the rules to have disability insurance benefits have changed since the first time [he] applied." *Id.* at 5. Plaintiff concludes by stating that he asks for review by the Court of the ALJ's decision denying him benefits. *Id.*

Plaintiff subsequently submitted a response to the Commissioner's motion for judgment on the pleadings, in which he states, *inter alia*, that he has done his best "to be a good man" and has "worked hard and raised [his] family to [the] best [of his] ability even though [his] body has

---

[2] Pincites to the complaint refer to the ECF-assigned page number.

5

suffered from the strain." Pl. Mem. at 2.³ Plaintiff states that his pursuit for a better life was "cut short" by his shoulder replacement surgeries and chronic lower back pain. *Id.* He contends, further, that "no one would dare want to walk in [his] shoes with the everyday pain [he] feel[s]." *Id.*

According to Plaintiff, he "met [his] grandchild for the first time," but is not able to hold her because of his arm and shoulder "range due to [his] replacement shoulder surgery." *Id.* He states that he will have to wait until she is older in order to be able to hold her because he does not have sufficient strength in his arms and back. *Id.* Plaintiff asserts his disagreement with the decision to deny him disability status. *Id.* He contends that, while the record shows that he could get on and off the examination table and take off his shoes, "[t]his is true but no one ever considered [his] height to be a factor." *Id.* He notes that he is 6 ft 3 inches tall and asserts that "anyone of [his] stature [can] sit on a standard examination table that stands only 3 feet high." *Id.*

Plaintiff asserts that, although Dr. Moser found that he could "lift and carry 20 pounds frequently, as well as frequently climb, balance, stoop, kneel, crouch, crawl, reach, handle, finger, and feel secondary to bilateral shoulder replacement," he disagrees with that assessment. *Id.* at 3 (internal quotation marks omitted). Specifically, Plaintiff argues that the "evaluation was not carried through thoroughly or properly . . . [because] Dr. Moser never asked during the evaluation about [his] pain or discomfort." *Id.* According to Plaintiff, his "quality of bodily movements ha[s] deteriorated" with the result that, "in order to even attempt to work eight to sixteen hour[s] shift," he would be overworking himself. *Id.* at 4.

---

³ Pincites to the Plaintiff's memorandum in opposition also refer to the ECF-assigned page number.

Plaintiff asserts that, in 2009, he agreed with Dr. Muffly to have left shoulder total replacement surgery, "[n]ot fully knowing what [he] got [himself] into and thinking [he] was helping [himself] get rid of the extreme pain [he] felt." *Id.* According to Plaintiff, after the surgery, he felt limited in many ways, and experienced constant fear that he would not be able to return to work in the pursuit of a better life for his family. *Id.* Plaintiff states that he is "coming forth on [his] own behalf for this case . . . to be overturned." *Id.* at 5.

## DISCUSSION

I. Legal Standard

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

> A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (citations omitted).

In reviewing a denial of Social Security disability benefits, the Court is limited to determining whether the Commissioner's conclusions are supported by "substantial evidence" in the record and are based upon a correct legal standard. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence" only "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448–49 (2d Cir. 2012) (internal

quotation marks, citation, and alterations omitted). As such, the substantial evidence standard is "a very deferential standard of review—even more so than the 'clearly erroneous' standard." *Id.* at 448. The Court may not conduct *de novo* review, *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999), nor substitute its judgment for that of the Commissioner, *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

To qualify for disability benefits, an individual must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(l)(A), 1382c(a)(3)(A). The Social Security Administration's regulations establish a five-step process for determining a disability claim. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).[4] "Although the claimant bears the general burden of proving that he is disabled under the statute, if the claimant shows that his impairment renders him unable to perform his past work, the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002) (internal quotation marks and citation omitted).

---

[4] The five steps are as follows: "If at any step a finding of disability or nondisability can be made, the [Social Security Administration] will not review the claim further. At the first step, the agency will find nondisability unless the claimant shows that he is not working at a "substantial gainful activity." At step two, the [Social Security Administration] will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the [Social Security Administration] assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the [Social Security Administration] to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003) (citations omitted).

II. <u>Analysis</u>

Upon review of the record, the Court agrees with the Commissioner, and finds that the ALJ properly followed the five-step sequential analysis when making the disability determination in this case and committed no legal error. The Court also finds that the ALJ's findings are supported by substantial evidence. The Court shall address each of these conclusions in turn.

First, the Court concludes that the ALJ properly followed the five-step analysis. Specifically, in addressing the "severe impairments" requirement in step two, *Barnhart*, 540 U.S. at 24 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)) (internal quotation marks omitted), the ALJ found that there was no evidence of a disorder of the spine resulting in compromise of nerve root or the spinal cord and, thus, Plaintiff's degenerative disc disease of the cervical and lumbar spine while severe, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 to qualify as a "severe impairment." Record at 18–19. The ALJ concluded that—though Plaintiff complained of chronic back pain and had a history of more specialized treatment prior to the alleged onset date—most of the examinations performed showed a functional range of motion of the neck and back, normal upper and lower extremity strength, grossly intact sensation, normal fine manipulation and grip, negative straight leg raise and normal gait. *Id.* The ALJ's determination of severe impairment at step two is decisive of the five-step inquiry. *Barnhart*, 540 U.S. at 24–25. As such, the Court is satisfied that the ALJ properly conducted the five-step analysis.

Second, the Court concludes that the ALJ's findings are supported by substantial evidence. For one, the ALJ properly found that the record shows that, while Plaintiff underwent bilateral shoulder replacements, he had not sought or received much medical treatment. Record

9

at 19. Thus, while the record shows that Plaintiff complained of lower back pain, had his left shoulder replaced in 2009, and his right shoulder replaced in 2014, the record is void of any medical evidence regarding these surgeries or any residual limitations. *Id.* at 22. Such examination findings show that Plaintiff retains functional range of motion within normal 4/5 motor strength, normal fine manipulation, normal finger dexterity and good grip. *Id.* at 24. This tends to show substantial evidence supporting the ALJ's findings.

Moreover, the ALJ observed that, in responding to a request for medical records, treating physician Dr. Muffly did not provide any treatment notes. *Id.* at 22. Instead, he wrote a note stating that Plaintiff is "limited by his bilateral total shoulder replacements." *Id.* The ALJ determined that, given the absence of objective medical evidence from this source, giving Plaintiff the benefit of the doubt, he fully considered Plaintiff's allegations and reasonably limited him to frequent use of both upper extremities and no reaching above shoulder level bilaterally. *Id.*

Additionally, as noted above, the ALJ also relied upon the opinion of consultative examiner Dr. Moser, who opined that Plaintiff had no restrictions for standing, walking, or sitting, could occasionally lift and carry 20 pounds, and frequently lift and carry 10 pounds. *Id.* at 23–24. In a specific assessment of functioning, Dr. Moser also found that Plaintiff could climb, balance, stoop, kneel, crouch and crawl frequently, could reach, handle, finger and feel frequently, but could not work at heights or around heavy machinery. *Id.* at 24. The ALJ noted that Dr. Moser's evaluation was supported by objective signs and findings that were consistent with the record as a whole showing Plaintiff was not as significantly limited as alleged. *Id.* Consequently, the ALJ gave great weight to Dr. Moser's evaluation and opinions because they were consistent with the record evidence developed at the hearing. *Id.* The ALJ also concluded

at 19. Thus, while the record shows that Plaintiff complained of lower back pain, had his left shoulder replaced in 2009, and his right shoulder replaced in 2014, the record is void of any medical evidence regarding these surgeries or any residual limitations. *Id.* at 22. Such examination findings show that Plaintiff retains functional range of motion within normal 4/5 motor strength, normal fine manipulation, normal finger dexterity and good grip. *Id.* at 24. This tends to show substantial evidence supporting the ALJ's findings.

Moreover, the ALJ observed that, in responding to a request for medical records, treating physician Dr. Muffly did not provide any treatment notes. *Id.* at 22. Instead, he wrote a note stating that Plaintiff is "limited by his bilateral total shoulder replacements." *Id.* The ALJ determined that, given the absence of objective medical evidence from this source, giving Plaintiff the benefit of the doubt, he fully considered Plaintiff's allegations and reasonably limited him to frequent use of both upper extremities and no reaching above shoulder level bilaterally. *Id.*

Additionally, as noted above, the ALJ also relied upon the opinion of consultative examiner Dr. Moser, who opined that Plaintiff had no restrictions for standing, walking, or sitting, could occasionally lift and carry 20 pounds, and frequently lift and carry 10 pounds. *Id.* at 23–24. In a specific assessment of functioning, Dr. Moser also found that Plaintiff could climb, balance, stoop, kneel, crouch and crawl frequently, could reach, handle, finger and feel frequently, but could not work at heights or around heavy machinery. *Id.* at 24. The ALJ noted that Dr. Moser's evaluation was supported by objective signs and findings that were consistent with the record as a whole showing Plaintiff was not as significantly limited as alleged. *Id.* Consequently, the ALJ gave great weight to Dr. Moser's evaluation and opinions because they were consistent with the record evidence developed at the hearing. *Id.* The ALJ also concluded

that Plaintiff's contention that he was unable to work was belied by his report of his ability to engage in activities of daily living, because "such activities require significant functional ability and some consistent form of attention." *Id.* at 21. As noted earlier, Plaintiff reported that he cooked, shopped for groceries, and went for walks, among other activities. *Id.* Taken together, the Court cannot conclude that the ALJ's findings are not supported by substantial evidence. Nor can the Court find reversible legal error in the standard the ALJ applied. *See* Record at 16–26.

Accordingly, the Commissioner's motion for judgment on the pleadings is GRANTED.

## CONCLUSION

For the reasons set forth above, the Commissioner's decision is AFFIRMED, and the Commissioner's motion for judgment on the pleadings, ECF No. 16, is GRANTED. The Clerk of Court is directed to terminate the motion at ECF No. 16, mail a copy of this order to Plaintiff *pro se*, and close the case.

SO ORDERED.

Dated: September 13, 2019
       New York, New York

_____
ANALISA TORRES
United States District Judge